MAUDE M. SMOKE, SPECIAL ADMINISTRATRIX, APPELLEE, V.
LAFE H. CARTER, APPELLANT.

FILED JANUARY 19, 1921. No. 21125.

1. **Evidence:** ADMISSIBILITY: EVIDENCE ON CORONER'S INQUEST. On the trial of a suit based on section 1428, Rev. St. 1913, for the wrongful killing of plaintiff's husband, it is not error to permit plaintiff to read in evidence part of the testimony given by defendant at the coroner's inquest held upon the body of deceased, where defendant is permitted to read in evidence so much of the remainder of such testimony as relates to the subject covered by the testimony read in evidence by plaintiff.

2. **Trial:** INSTRUCTIONS. The rulings of the trial court on the instructions outlined in the opinion *held* free from error.

APPEAL from the district court for Lancaster county: LEONARD A. FLANSBURG, JUDGE. *Affirmed.*

*Holmes, Chambers & Mann,* for appellant.

*Wilmer B. Comstock, contra.*

MORRISSEY, C. J.

Plaintiff, as administratrix, in behalf of herself and her two minor children, recovered a judgment for $5,000 against defendant for the negligent and wrongful act of defendant in causing the death of her husband, Walter D. Smoke. The action was based on section 1428, Rev. St. 1913, which reads:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default, of any person, company or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in

(520)

respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

Plaintiff alleged that defendant unlawfully and wrongfully shot and killed the deceased. Defendant by his answer alleged that, after he had retired, on the evening of the shooting, his wife heard a noise outside their house, and in looking out of the window she discovered a man; that she became frightened and screamed; that in response to her cry of alarm defendant arose from his bed, procured an automatic revolver, and going to an open window observed a man close to the side of the house and approaching the window; that defendant fired at the man for the purpose of driving him away; that defendant did not know the purpose of the man in being upon defendant's premises; and denied that he used more force than necessary to expel him therefrom, and to prevent him from entering the home; that deceased in entering upon defendant's premises was a trespasser, and "acted in a manner unlawful, wilful, and malicious, and by so doing caused defendant and his wife great fear and greatly excited and terrorized them; and that defendant in his excitement and through fear, caused by deceased's presence, believed that deceased had evil designs upon some one of his family, or wilful, malicious, and felonious designs." Defendant denied that he entertained malice toward deceased, and alleged that he was fully warranted and justified in what he did.

The evidence shows that deceased was a man of good reputation, 39 years of age, engaged in the United States railway mail service, residing with his wife and two children in the same general neighborhood where defendant resided. No trouble between the families is shown to have existed, if, in fact, it appears they were even acquainted. On May 15, 1918, after defendant had retired,

he was aroused by his wife's screams, she stating that there was a man outside the bedroom window, which was open. Defendant arose from his bed, procured his revolver, went to the window, and seeing deceased outside of the house fired at him through the window. Deceased at once turned and ran toward the alley. Defendant jumped through the open window and pursued deceased toward the alley, shooting at deceased as he fled. Deceased ran up the alley for some distance, followed by defendant. Defendant says: "He turned out of the alley and then went north and stumbled over a fence there. * * * I stumbled over the fence, too. * * * I shot twice after I got out of the window, and I hollered 'stop' just the minute I hit the ground. * * * He kept on running, and I fired two more shots, and then I chased him up the alley as fast as I could go. * * * I hollered again after him to stop, going up the alley, but he never stopped, and we possibly ran 50 yards up the alley, and he turned to his left, and just after he turned to his left he fell. I thought possibly he just stumbled, but he got up and ran again; but I followed and fell over the chicken fence. * * * But I gained my feet again and started after him again. He possibly ran, I should judge, 12 or 15 yards, and he fell again, and there was another fence there, and I shot twice as he hit the fence, and when he fell over the fence he said, 'Don't shoot any more,' he said, 'You've got me,' he said, 'I am dying; call a doctor.' And I said, 'Don't you move; if you move I will shoot again; I am holding the gun right on you,' and he said, 'I will not move; you have got me.' "

Defendant was armed with a five-chamber automatic revolver. Every chamber was discharged; four bullets took effect in deceased's body, and from these wounds he died. Aside from the amount of the verdict, in case of recovery, the only question for the jury to determine was: Did the death of deceased result from the wrongful act, neglect or default of defendant?

Appellant first complains of the ruling of the trial court in permitting counsel for plaintiff to read in evidence part of the testimony given by defendant at the coroner's inquest held over the body of the deceased, and in this connection contends that defendant was denied the privilege of reading the remainder of defendant's testimony given on that hearing. This contention is not supported by the record. When plaintiff offered to read in evidence part of defendant's testimony given at the coroner's inquest, counsel for defendant objected to the reading of part of it, but stated that he did not object to having it all read. Whereupon the court ruled that the admissions which were against interest might be read, and that defendant might read any part of the testimony that pertained to what plaintiff read. The bill of exceptions shows that counsel for defendant was permitted to read, and did read, so much of that testimony as pertained to the statements read on behalf of plaintiff. This being true, there was no error in the ruling of the court on the admission of the evidence.

Instructions given by the court are criticised, especially instruction No. 6. By this instruction the court told the jury that the killing of deceased was such a wrongful act on the part of defendant as would entitle plaintiff to recover damages, unless the act might be justified or excused; that, should the jury find defendant justified, the finding should be in his favor; but, if they found he was not justified, the verdict should be for the plaintiff. By instruction No. 4 the court had already told the jury that the burden of proof was upon plaintiff to prove that deceased was killed by the wrongful or unlawful act of defendant, and that defendant was not justified in killing the deceased. It is claimed that these instructions are in conflict. We do not find it so. The rule is well established that instructions must be construed together, and when this rule is applied there is neither conflict nor confusion in the instructions. It is said that instruction No. 5 is in conflict with instruction No. 6. Instruction No. 5 merely applies the law as laid down in the section of the statutes here-

tofore quoted to the facts in this case. Finally, appellant claims that the court erred in refusing to give instruction No. 10 requested by defendant. This instruction would have told the jury that, if defendant fired the fatal shots, believing his action to be necessary to prevent burglary or some other offense against himself, his family or his property, he would not be civilly liable for the death of deceased, although the attempt to commit burglary or other offense did not exist, and deceased was upon defendant's premises for some other purpose, providing the circumstances were such that other reasonable men would have been likely to be mistaken as to the purpose of deceased. First, it may be said that there is total lack of evidence tending to show a felonious intent on the part of deceased, unless it is to be said that the mere fact that he walked upon defendant's uninclosed lot in the nightime is to be accepted as some evidence of an intent to commit an unlawful act. But by instructions 7, 8, and 9, given by the court on its own motion, the court properly defined the right of defendant to protect his home and his family against assault. By these instructions defendant was given the benefit of the substance of the instruction offered so far as it was applicable to the issues.

In addition to the foregoing assignments, appellant complains of the opening statement of counsel for plaintiff to the jury. This statement is set out in full in the bill of exceptions, but we are unable to find where counsel transgressed the rules of propriety. Finally, it is said that the court erred in denying a new trial on the ground of newly discovered evidence, but the showing is not in the bill of exceptions, and is therefore not before us. There is no substantial contradiction in the evidence; the rulings of the court are free from error, and the judgment is

AFFIRMED.

FLANSBURG, J., not sitting.